IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FRED D. WOODS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV525 |
| | ) | |
| SALEM ELECTRIC COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Fred D. Woods, Jr., brings this action against his former employer, Defendant Salem Electric Company ("Salem Electric"), alleging racial discrimination and retaliation in violation of 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"). Before the Court is Defendant's Motion for Summary Judgment (ECF No. 13). For the reasons set forth below, the Court grants Defendant's motion.

**I.      STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (finding that "unsupported speculation . . . is not enough to defeat a summary judgment motion").

In opposing a properly supported motion for summary judgment, the nonmoving party cannot rest on "mere allegations or denials," *Liberty Lobby*, 477 U.S. at 248, and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

## II. FACTUAL BACKGROUND

"Salem Electric is an electrical contracting company offering commercial, industrial and residential service, located in Winston-Salem, North Carolina." (ECF No. 14 at 1.) In or around August 2005, Plaintiff, who is African-American, began working for Salem Electric through Tradesmen International, a temporary staffing agency. (ECF No. 1 ¶¶ 3, 6; ECF No. 20 at 3.) Plaintiff worked with, and reported to, Wayne Gordon ("Gordon"), Project Manager, and Ronnie Thomas ("Thomas"), Supervisor. (ECF No. 1 ¶ 9; ECF No. 29 at 18:21–23.) At the recommendation of Gordon and Thomas, in January 2007 Plaintiff applied for a full-time position with Salem Electric. (ECF No. 31 at 9:20–22; ECF No. 20 at 2.) Plaintiff was hired

by Salem Electric on January 22, 2007 as an Apprentice II at a pay rate of $12.50 per hour. (ECF No. 20 at 2; ECF No. 29 at 72:2–3.) During Plaintiff's full-time employment with Salem Electric, he continued to be supervised by Thomas and Gordon, though Plaintiff directly reported to Thomas. (ECF No. 1 ¶ 9; ECF No. 5 ¶ 9; ECF No. 29 at 25:20–22, 26:11–13; ECF No. 30 at 15:9–12; ECF No. 31 at 7:2–3.)

On February 25, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("First EEOC Charge") alleging that he was discriminated against based on his race in that he was "subjected . . . to a racially hostile work environment." (ECF No. 14-1 at 1.) Specifically, among other things, Plaintiff alleged in his First EEOC Charge that: (i) his Supervisor, Thomas, who was White, called him "boy" three (3) times during a conversation; (ii) approximately four (4) years prior to the filing of his First EEOC Charge, in response to having asked Thomas a question, Thomas told him that "he was going to get a noose and tighten it every time [Plaintiff] asked [Thomas] a question"; (iii) he was promoted to the position of Mechanic in November 2013[1] while a "less qualified" White Salem Electric employee had been promoted to the position of Mechanic "in March or May 2013"; and (iv) Thomas treated Plaintiff "less favorably" than the other employees." (*Id.* at 1–2.) Prior to filing the First EEOC Charge, Plaintiff did not report Thomas' use of the words "boy" and "noose" to Salem Electric. (ECF No. 29 at 42:19–43:4; 46:4–15.) Upon notification of Plaintiff's filing of this First EEOC Charge, Salem Electric's Vice President and EEO Coordinator, Stephen Sink ("Sink"), conducted an investigation of Plaintiff's allegations

---

[1] Plaintiff's Salem Electric personnel records reflect that Plaintiff was actually promoted to Mechanic in September 2013, not November 2013 as stated in the First EEOC Charge. (ECF No. 20 at 4, 7, 11.)

3

during which he interviewed Plaintiff, Thomas, and Gordon. (ECF No. 28 at 12:14–18, 87:3–25.) Thomas admitted to having used the word "boy" but denied having used the word "noose". (ECF No. 28 at 88:6–12; ECF No. 30 at 27:8–12, 29:24–30:1.) As a result of Salem Electric's investigation, Thomas was given a verbal warning in which he was told "not to use the word noose or . . . the word boy" and "that if he used it anymore, there'd be disciplinary action taken up to and including termination." (ECF No. 28 at 91:1–2, 93:15–20.)

On August 4, 2014, Plaintiff filed a second Charge of Discrimination with the EEOC ("Second EEOC Charge") alleging retaliation by Salem Electric for having filed the First EEOC Charge. (ECF No. 14-2.) Plaintiff was ultimately terminated on September 8, 2014 for "[g]ross misconduct, sexual harassment." (ECF No. 20 at 13.)

Plaintiff subsequently initiated the instant action, alleging violations of Title VII and Section 1981. Defendant has moved for summary judgment on every claim asserted by Plaintiff.

### III. DISCUSSION

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001).

In addition to Title VII, Section 1981 also provides "a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.,*

4

421 U.S. 454, 459–60 (1975). Under Section 1981, an individual is entitled to both equitable and legal recovery. *Johnson*, 421 U.S. at 460. "Congress [has] noted 'that the remedies available . . . under Title VII are co-extensive with the individual's right to sue under [Section 1981], and that the two procedures augment each other and are not mutually exclusive.'" *Johnson*, 421 U.S. at 459 (quoting H.R. Rep. No. 92–238, 19 (1971), U.S .Code Cong. & Admin. News, 1972, 2137, 2154).

A. **Racial Discrimination**

    i.    Hostile Work Environment Claim

Plaintiff has asserted a hostile work environment claim under Title VII and Section 1981. To survive summary judgment on a race-based hostile work environment claim, Plaintiff must show that a reasonable jury could find that the alleged conduct was "(1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and to create an abusive work environment; and (4) imputable to [Plaintiff's] employer." *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015); *see Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 424 n.7 (4th Cir. 2014) (explaining that "[t]he standard used to evaluate a racial hostile work environment claim under § 1981 is the same as the standard under Title VII").

Plaintiff argues that while at Salem Electric, he was subjected to "various unwelcome remarks and treatment . . . based on his race." (ECF No. 19 at 6.) Specifically, Plaintiff cites the following: (i) Thomas' reference to "tying a noose if [Plaintiff] asked too many questions"; (ii) Thomas speaking to Plaintiff loudly in response to questions in order to embarrass Plaintiff; and (iii) Thomas having called Plaintiff "boy". (*Id.*) There appears to be no dispute between

5

the parties that, viewed in the light most favorable to Plaintiff, this alleged conduct was unwelcome and based on race. Rather, the parties' arguments focus on whether the conduct at issue was sufficiently severe or pervasive, and whether there is a basis for imputing liability to Salem Electric.

### a. *Severe and pervasive conduct*

Title VII and Section 1981 prohibit conduct that permeates the workplace "with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create[s] an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)); *see Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 226 (4th Cir. 2016) (stating that "[t]he 'severe or pervasive' question is subject to the same standard under § 1981 that applies to Title VII"). The determination of whether conduct is "severe and pervasive" is both subjective and objective. *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). As such, a plaintiff "must show that [he] did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Id.* Yet, although a plaintiff may subjectively believe that the offending conduct created a hostile work environment, "[c]onduct that is not severe or pervasive enough to create an *objectively* hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21 (emphasis added). To determine whether harassment is sufficiently pervasive to create an objectively hostile and abusive work environment, courts must consider the totality of circumstances including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or

humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000).

While offensive utterances, without more, generally do not rise to the level of an actionable claim, courts have upheld claims of hostile work environment based on the use of "racially abusive language" that was "repeated", "continuous", and "prolonged". *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 (11th Cir. 1982). For example, in *White v. BFI Waste Services*, the Fourth Circuit reversed the lower court's grant of summary judgment for the defendant employer as to plaintiffs' hostile work environment claims based on plaintiffs' evidence that supervisors in workplace "repeatedly" used the "N" word, as well as other insulting terms such as "boy", "porch monkey", "jigaboo", "Mighty Joe Young", and "Zulu warrior", to refer to black employees. 375 F.3d 288, 297–98 (4th Cir. 2004). Faced with such evidence, the Fourth Circuit held that "a reasonable jury could find both [Plaintiffs] suffered harassment that was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere.'" *Id.* at 297 (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). Similarly, in *Freeman*, the Fourth Circuit concluded that, "viewing the circumstances as a whole . . . the use of the ["N" word], coupled with the on-going offensive racial talk, use of the term 'black b****' on more than one occasion (once directed at a black employee), and sexual talk regarding black women, is sufficient evidence for a reasonable jury to find the race-based harassment was objectively severe or pervasive." 750 F.3d at 422.

Here, Plaintiff argues that Thomas used a racial epithet when he called him "boy", a term which "is offensive and demeaning to [Plaintiff] because it is one of the terms used by slave masters to get the attention of and dehumanize salves [sic] who were primarily African-Americans." (ECF No. 19 at 1.) Plaintiff testified that on or around September 2013 he engaged in a work slow-down, precipitated by his frustration over the fact that he did not have a helper assigned to assist him on his job site. (ECF No. 29 at 39:15–40:5.) Plaintiff was also frustrated that he was "not getting the pay that everybody else [was] getting." (*Id.* at 39:24–25.) Thomas approached Plaintiff about the work slow-down. (*Id.* at 40:6.) According to Plaintiff,

> [Thomas] comes up [to Plaintiff] and like what's the problem. I said nothing. He's like, well, I don't know what your problem is, boy, but you messing with the wrong one, boy, I'm going to tell you, boy. And I was like look, I'm working. Boy, you better – you got to act like you got some sense.

(*Id.* at 40:6–11.) Plaintiff also testified that, several years prior to this incident, in 2010, Thomas also used the word "noose" toward him. According to Plaintiff, "[a]fter I asked [Thomas] a question, he said he was going to get a noose and tighten it every time I asked him a question."[2] (*Id.* at 46:4–9.)

Although Plaintiff contends he was offended by Thomas' comments which "hurt [his] feelings . . . [his] self-esteem, everything," (ECF No. 29 at 42:3–8), unlike the plaintiff in *Freeman*, 750 F.3d at 421, he neither complained directly to Thomas about the offensive

---

[2] Thomas denies having used the word "noose," (ECF No. 30 at 27:8–12), however, for the purposes of considering Salem Electric's Motion for Summary Judgment, the Court must "resolve all factual disputes and any competing rational inferences in the light most favorable" to the nonmoving party. *See Rossignol*, 316 F.3d at 523 (quoting *Wightman*, 100 F.3d at 230).

8

comments, nor did he report the comments to anyone at Salem Electric. (ECF No. 29 at 42:19–43:4, *see* 46:4–15.) *See Cent. Wholesalers*, 573 F.3d at 170–71 (ruling that because the employee complained directly to her offending co-workers as well as to management about the alleged harassment, a reasonable jury could find that the employee subjectively perceived the gender- and race-based harassment to be severe and pervasive).

Moreover, as explained by the Fourth Circuit, "repeated conduct" is a hallmark of "viable hostile work environment claims." *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). The record in this case, however, is devoid of evidence showing that Plaintiff was subjected to the kind of repeated, on-going harassment to support a finding that the discriminatory conduct was severe and pervasive. *See, e.g.*, *White*, 375 F.3d at 298 (concluding that plaintiff's evidence of repeated use of racially offensive terms was sufficient for a jury to find severe or pervasive harassment giving rise to a hostile work environment); *Spriggs*, 242 F.3d at 184 (finding plaintiff had shown that harassment was severe and pervasive where plaintiff was "exposed on a 'continuous daily' basis to . . . racist comments concerning African Americans"). Rather, the record shows that the two (2) incidents where allegedly harassing comments were made occurred approximately three (3) years apart. According to Plaintiff, the "noose" comment was made sometime in 2010, and the "boy" comments were made in September 2013. (ECF No. 29 at 41:20–22, 46:4–9.) Plaintiff testified that prior to his exchange with Thomas in September 2013, he had never heard Thomas use the word "boy" to address him or anyone else. (*See id.* at 42:9–18.)

While this Court does not discount Plaintiff's contention that he found Thomas' use of the words "boy" and "noose" offensive, as stated by the Fourth Circuit, "even incidents

9

that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). For, "in order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" *Id.* (alterations in original) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Additionally, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank,* 477 U.S. at 67). The Court therefore concludes that, considering the totality of circumstances, a reasonable jury could not find the alleged incidents of harassment sufficiently severe or pervasive to alter the terms of Plaintiff's employment and create an abusive work atmosphere.

### b. *Imposition of liability on Salem Electric*

Under Title VII, "even if the record supports the conclusion that a triable issue exists with regard to" each of the other elements necessary for a race-based hostile work environment claim, Plaintiff "may not prevail absent sufficient evidence" that there is a basis for imposing liability on Salem Electric. *Spriggs*, 242 F.3d at 184. "Employers are generally presumed to be liable for hostile work environment harassment committed by supervisory employees." *White*, 375 F.3d at 299; *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (explaining that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor"). The Supreme Court has held that "a 'supervisor' for purposes of vicarious liability under Title VII [is one who is] empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State*

*Univ.*, 133 S. Ct. 2434, 2439 (2013). An employer will not be held liable, however, when the employer can show, by a preponderance of evidence, that it: (1) "'exercised reasonable care to prevent and correct promptly any harassing behavior;' and (2) the plaintiff 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise.'" *Spriggs*, 242 F.3d at 186 (quoting *Ellerth*, 524 U.S. at 765); *see Faragher*, 524 U.S. at 807. There is, therefore, "a duty on the victim to report [his] supervisor's harassing behavior to the employer." *Boyer-Liberto*, 786 F.3d at 278.

The record before the Court shows that Salem Electric: (i) distributed copies of its EEO Policy to its employees (*see* ECF No. 28 at 49:9–50:9; March 6, 2014 EEO Policy acknowledgement form signed by Plaintiff, ECF No. 20 at 12); (ii) held mandatory EEOC Training sessions for its employees (*see* EEOC Training employee sign-in sheets, ECF No. 22 at 2–10; *see also* ECF No. 28 at 13:3–16, 19:10–17); and (iii) posted the company's EEO policy on the bulletin board in the main office (ECF No. 26 at 2–3; ECF No. 28 at 44:21–45:9). "[D]istribution by an employer of an anti-harassment policy provides 'compelling proof that the [employer] exercised reasonable care in preventing and promptly correcting' harassment." *White*, 375 F.3d at 299 (second alteration in original) (quoting *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001)). The record also reflects that, upon receipt of Plaintiff's First EEOC Charge alleging that offensive comments were made to Plaintiff by Thomas, Salem Electric conducted an investigation and issued a verbal warning to Thomas. (ECF No. 30 at 35:10–19; *see id.* at 11:16–12:7; ECF No. 28 at 91:1–2, 93:12–13, 94:1–5.) According to Sink, "I made it very clear [to Thomas] that we were not to use the word noose or to use the word boy." (ECF No. 28 at 91:1–2; *see* ECF No. 30 at 13:3–6, 35:9–19.)

11

In addition, Plaintiff admitted that he did not report his supervisor's harassing behavior to Salem Electric. *See Boyer-Liberto*, 786 F.3d at 278. Plaintiff testified he did not report Thomas' use of the term "boy" to anyone at Salem Electric because "the HR department is predominantly white . . . everybody in house at the office is white. I have no way of going in there, me being the only minority, to talk to anyone or feel comfortable. So, no, I did not. I was afraid for my job." (ECF No. 29 at 42:22–43:4.) Further, regarding the "noose" comment, Plaintiff testified that he "did not want to go to HR"; he "was scared for [his] job"; and he did not tell any of his co-workers[3] about Thomas having made that comment to him. (ECF No. 29 at 46:10–25.) As argued by Salem Electric, Plaintiff also "admitted that he had no basis for his fear" of losing his job. (ECF No. 14 at 11.) During Plaintiff's deposition, when asked whether there was a basis for his belief that he would lose his job if he reported Thomas' conduct, Plaintiff responded, "[n]o, I've heard about people losing their job. . . . Just several employees. I don't know their names. But they're also minorities." (ECF No. 29 at 36:2–9.) Title VII is "specifically designed to encourage harassed employees to turn in their harasser because doing so inures to everyone's benefit." *Barrett*, 240 F.3d at 267. As such, "[c]ourts have refused to recognize a nebulous fear of retaliation as a basis for remaining silent." *Id.* (quotation omitted). Accordingly, the Court concludes that, based on the record,

---

[3] Despite Plaintiff's admission that he did not tell any of his co-workers about Thomas' "noose" comment, Omar Blair ("Blair"), an African-American former employee (who worked for Salem Electric from 2005-2012), stated during an EEOC interview that he "witnessed Thomas tell [Plaintiff] that he was going to put a noose around his neck [and] he heard Thomas call [Plaintiff] 'boy' several times." (ECF No. 27 at 2.) Blair also stated during the EEOC interview that Thomas never referred to him (Blair) as "boy", nor did he ever witness Thomas use the "N" word or refer to other employees as "boy." (*Id.*)

12

no reasonable jury could find that there is a sufficient basis to impose liability on Plaintiff's employer.

As a result of the above findings, Salem Electric is entitled to judgment as a matter of law on Plaintiff's hostile work environment claim.

ii. Failure to Promote Claim

In addition to his hostile work environment claim, Plaintiff has also alleged that Salem Electric "discriminated against him in failing to promote him." (ECF No. 1 at 2.) Defendant argues that this claim fails as a matter of law because Plaintiff "has produced no evidence of circumstances that give rise to an inference of unlawful discrimination in connection with [this] claim." (ECF No. 14 at 12, 13.)

Under Section 1981 or Title VII, in order to establish a *prima facie* case of failure to promote based on race, Plaintiff must establish the following: (1) that he is a member of a protected group; (2) that he applied for the position in question; (3) that he was qualified for the position; and (4) that Salem Electric rejected him for the position under circumstances giving rise to an inference of unlawful discrimination. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 544–45 (4th Cir. 2003); *see also Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). Following the *McDonnell-Douglas* [4] burden-shifting model, once Plaintiff has established a *prima facie* case, the employer may rebut that case by "demonstrating that the person promoted was better qualified for the position." *Amirmokri v. Baltimore Gas and Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir. 1995). The burden then shifts back to Plaintiff to show that the reason provided by the employer for promoting the selected application was pretextual. *Id.* at 1129–30.

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

13

At Salem Electric, an employee can receive a promotion and raise either: (i) by informally making a request to his direct supervisor (who would then decide whether to recommend to Sink, the company's Vice President, that the requesting employee receive a promotion and raise); or (ii) more formally, by participating in the company's state-sponsored Apprenticeship Program. (ECF No. 28 at 10:5–16, 60:21–61:21; ECF No. 30 at 17:4–9; ECF No. 31 at 29:16–30:14.) Salem Electric's Apprenticeship Program offers its employees the opportunity to attend a four-year program at Forsyth Technical College. (ECF No. 28 at 60:21–61:7.) This program is subsidized by Salem Electric and "[a]nd as long as you stay in that school, every six months you get a 5 percent raise." (ECF No. 31 at 21:23–25; *see* ECF No. 28 at 60:25–61:2.) Upon an employee's successful completion of the Apprenticeship Program, he is guaranteed to receive a promotion at Salem Electric. (ECF No. 14 at 5; ECF No. 31 at 21:25–22:2.) If an employee has prior education, the Program coordinators at Forsyth Technical College will determine whether that employee will get credit for their prior education and begin in the second year class instead of the first year class. (ECF No. 28 at 81:13–82:1.) Employees are informed about the Apprenticeship Program upon hiring, and Sink sends notices to all Apprentices in July or August of each year, informing them of the upcoming registration dates for the apprenticeship class at Forsyth Technical College. (ECF No. 28 at 81:8–13; ECF No. 25 at 2–7.)

Plaintiff argues that despite his qualifications, he was not promoted to the position of Mechanic "while [Ben Hinson ("Hinson"), a White employee], who was similarly situated, got promoted." (ECF No. 19 at 16.) Yet, as pointed out by Salem Electric, there is no evidence before the Court that Plaintiff actually applied for, or otherwise sought, the Mechanic position

14

or that, despite his qualifications, he was rejected based on his race. (ECF No. 33 at 6.) Nor does the record reflect that Plaintiff participated in the Apprenticeship Program, which guarantees employees a promotion and pay raise at a faster rate, (ECF No. 29 at 56:1–3; *see id.* at 74:11-17), while Hinson (whom Plaintiff alleges was "less qualified"), successfully completed the Program leading to his promotion, (ECF No. 28 at 96:3–5, 19–21). Rather, as Plaintiff admits and the evidence reflects, Plaintiff actually received a promotion to the position of Mechanic, as well as a pay increase, in September 2013. (ECF No. 29 at 73:14–22; ECF No. 20 at 7, 11.) Thus, Plaintiff's sole contention is that Ben Hinson "was promoted to mechanic before him." (ECF No. 19 at 16; ECF No. 14-1.)

Consequently, the Court concludes that no reasonable jury could find that Plaintiff has established a *prima facie* case of failure to promote based on race. Salem Electric is therefore entitled to summary judgment on this claim.

### B. Retaliation[5]

To establish a *prima facie* case of retaliation under Title VII and Section 1981, a plaintiff must show: "(i) that [he] engaged in protected activity, (ii) that [his employer] took adverse action against [him], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Guessous*, 828 F.3d at 217 (quoting *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). Here again, courts employ the

---

[5] Defendant, in a footnote, argues that because Plaintiff has failed to exhaust his administrative remedies under Title VII, "he can only proceed under Section 1981 as it relates to his termination." (ECF No. 14 at 13 n.2.) However, the Fourth Circuit has specifically considered whether a plaintiff, who has previously filed an EEOC Charge, must first exhaust administrative remedies before suing based on a Title VII claim of retaliation. The Fourth Circuit held that "a plaintiff may raise the retaliation claim for the first time in federal court." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992). The Court will therefore evaluate Plaintiff's retaliation claim under both Title VII and Section 1981. *Bryant*, 333 F.3d at 543.

*McDonnell Douglas* burden-shifting framework, and upon establishing a *prima facie* case, the burden shifts to the defendant "to articulate a . . . non-retaliatory reason for the adverse action." *Id.* at 216. The burden then shifts back to the plaintiff to show that the employer's proffered reason "is a pretext and that the true reason is . . . retaliatory." *Id.*

Plaintiff contends that he "suffered adverse employment actions as a direct result of his E.E.O.C. complaints in the form of termination." (ECF No. 1 ¶¶ 25, 35.) Defendant argues, on the other hand, that they are entitled to summary judgment as to this claim because there is no competent evidence connecting Plaintiff's termination to his filing of EEOC Charges. (ECF No. 14 at 13–15.) The Court agrees with Defendant.

It is undisputed that filing an EEOC Charge of Discrimination is a protected activity, and termination constitutes an adverse employment action. *See Carter*, 33 F.3d at 460 (stating that filing an EEOC complaint is a protected activity); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (recognizing that termination is an adverse employment action). As to a causal link, the Fourth Circuit has recognized that temporal proximity alone may be sufficient to satisfy this element. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). However, the "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (internal quotations omitted); *see, e.g.*, *Cerberonics*, 871 F.2d at 454, 457 (finding approximately three (3) months sufficient to establish a causal link); *but see, e.g.*, *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (concluding that thirteen months is not sufficient to establish a causal link). Here, Plaintiff filed his Second EEOC Charge on

16

August 4, 2014 (ECF No. 14-2) and he was terminated by Salem Electric approximately one (1) month later on September 8, 2014 (ECF No. 20 at 13.) Therefore, the Court finds that Plaintiff has established a *prima facie* case of retaliation under Section 1981.

The Court must now examine whether Salem Electric has met its burden of articulating a "non-retaliatory reason for the adverse action," *Guessous*, 828 F.3d at 216, such that a reasonably jury could not find in Plaintiff's favor. The record reflects that, on August 29, 2014, one of Salem Electric's female employees, Kathy Hayes ("Hayes"), complained to Salem Electric that Plaintiff "had repeatedly made sexual noises in her presence and would laugh after making the noise. In addition, Ms. Hayes complained that [Plaintiff] often cursed and used offensive and inappropriate language at the worksite." (ECF No. 15 ¶ 6.) Having received this complaint against Plaintiff, Salem Electric suspended Plaintiff with pay (from August 30, 2014 through September 5, 2014) and conducted an investigation into the allegations regarding Plaintiff's conduct. (ECF No. 20 at 13; ECF No. 15 ¶ 7; ECF No. 28 at 116:1–5.) The investigation was conducted by the company's Vice Presidents, Elizabeth Myers ("Myers") and Stephen Sink ("Sink"), as well as its General Superintendent, Jeff Heath ("Heath"), and Ladd Whicker ("Whicker"), the former Safety Director and current Director of Operations. (ECF No. 15 ¶ 7.) Salem Electric interviewed a number of its employees, including Plaintiff, his co-workers and his direct supervisor at the time, Jason Cockerham ("Cockerham"). (ECF No. 15 ¶¶ 7, 9; ECF No. 28 at 116:1–20.)

Ultimately, Salem Electric's investigation "confirmed that Ms. Hayes' allegations were valid" (ECF No. 15 ¶10), with Plaintiff having admitted to making sexual noises, described as a "queefing" sound, at the worksite, though he denied doing so in Hayes' presence, (ECF

17

No. 29 at 141:5–14). The investigation also revealed that Plaintiff "would regularly use derogatory slurs such as 'hey gay boy,' 'queer' and 'faggot'" at Salem Electric's work site. (ECF No. 15 ¶ 10; ECF No. 28 at 118:15–19.) At the conclusion of the investigation, Myers, Sink and Whicker "collectively determined" to terminate Plaintiff "for repeatedly making the 'queefing' noise at the jobsite and in Ms. Hayes [sic] presence and for using derogatory slurs . . . at work." (ECF No. 15 ¶¶ 13–14.) Plaintiff's "Employee Termination Notice" reflects that Plaintiff was terminated on September 8, 2014 for "Gross misconduct, sexual harassment." (ECF No. 20 at 13.) The record also reflects that, in addition to its termination of Plaintiff, Salem Electric also terminated Plaintiff's direct supervisor at the time, Cockerham, "for failing to report or reprimand [Plaintiff] for the inappropriate noise or use of derogatory slurs." (ECF No. 15 ¶ 14; ECF No. 28 at 119:4–8.) Additionally, Salem Electric suspended both Gordon and Thomas for two (2) weeks because they "allow[ed] the use of inappropriate language by [Plaintiff] and other employees at work." (ECF No. 15 ¶ 14.) Although Plaintiff argues in his response that he "was not terminated because of a noise that everyone around him was making," (ECF No. 19 at 18), the record before the Court does not support this contention. The Court therefore concludes that Salem Electric has met its burden of showing a non-retaliatory reason for Plaintiff's termination and that a reasonable jury could not find in Plaintiff's favor. Accordingly, Salem Electric is entitled to summary judgment on Plaintiff's retaliation claim.

In light of the Court's ruling on Defendant's Motion for Summary Judgment, the Court will deny as moot Defendant Salem Electric Company's Motion to Dismiss Based on Plaintiff's Failure to Comply with Court Orders and Failure to Prosecute (ECF No. 43).

For the reasons outlined herein, the Court enters the following:

### ORDER

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (ECF No. 13) on all claims is GRANTED and that Defendant Salem Electric Company's Motion to Dismiss Based on Plaintiff's Failure to Comply with Court Orders and Failure to Prosecute (ECF No. 43) is DENIED AS MOOT.

IT IS FURTHER ORDERED that this matter is hereby DISMISSED WITH PREJUDICE. A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 6th day of January, 2017.

                                                /s/ Loretta C. Biggs
                                            United States District Judge